Hermelinda **CHAVARRIA**, Individually and as Representative of the Estate of Robert L. Chavarria, Deceased and as Next Friend of Hermelinda Chavarria, a Minor Child, Reynaldo Chavarria, Ricardo Chavarria, Ruben Chavarria, Robert Chavarria, Jr., and Roel Chavarria, Appellants,

v.

**VALLEY TRANSIT CO., INC., Appellee.**

No. 04–01–00184–CV.

Court of Appeals of Texas, San Antonio.

Feb. 27, 2002.

William J. Tinning, Law Offices of William J. Tinning, Portland, Jaime E. Carrillo, Carrillo Law Office, L.L.P., Kingsville, for appellants.

Vada L. Staha, Roland L. Leon, Barker, Leon, Fancher & Matthys, Corpus Christi, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ Justice and PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

Hermelinda Chavarria, individually and as representative of the estate of Roberto Chavarria, deceased, and as next friend of Hermelinda Chavarria, a minor child, Reynaldo Chavarria, Ricardo Chavarria, Ruben Chavarria, Roberto Chavarria, Jr., and Roel Chavarria ("the Chavarrias") appeal the trial court's take nothing judgment in favor of Valley Transit Co. ("Valley Transit"). In two points of error, the Chavarrias argue: (1) the trial court erred in not granting a new trial based on juror misconduct, and (2) the jury's finding that Valley Transit was not negligent is against the great weight and preponderance of the evidence. We affirm the trial court's judgment.

## BACKGROUND

On June 7, 1997, Roberto Chavarria ("Roberto") was struck and killed by a bus owned and operated by Valley Transit. Valley Transit's agent, Jose Roel ("Roel"), was driving the bus when the accident occurred. The facts surrounding the accident are as follows.

Roberto had spent the evening at Mario's Dance Hall in Premont, Texas with his brother Raul Chavarria ("Raul"). While at Mario's the two brothers danced and played pool. It is not clear from the record exactly how much alcohol Roberto consumed, but several witnesses testified that he only drank one or two beers and was not visibly intoxicated. When Mario's closed at 2 A.M., Roberto and Raul argued over Raul's ability to drive them home. Apparently, Roberto believed Raul was too intoxicated to drive. After Raul refused to let Roberto drive, Roberto decided to walk home. Roberto lived in the nearby town of Alice, Texas. Roberto was last seen leaving Premont walking along the northbound side of Highway 281 toward Alice.

Highway 281 is a four-lane divided highway. The Valley Transit bus also was traveling north on Highway 281 between Premont and Alice. The bus was driving in the right hand land using its low beam headlights. There were no lights of any kind running along the highway, thus the area was extremely dark. Thomas Klingler ("Klinger") was a passenger on the bus seated directly behind and to the right of the bus driver, Roel. Klinger was the only eyewitness to the accident. Approximately fifty feet, or mere seconds, before impact, he saw what he thought was a man standing in the highway. Klinger testified that Roberto was standing eight inches to a foot inside (or to the left of) the right hand shoulder line of the highway with his back to the bus, slouched over as if he was asleep on his feet. Roel never saw Roberto standing in the road, and Klinger did not have time to warn Roel of the impending collision. The front right side of the bus struck Roberto, killing him instantly.

His body was thrown some 150 feet and landed in a grass field along the highway.

Roel initially believed he had hit an animal. Klinger repeatedly told Roel he thought the bus had struck a human. Roel eventually pulled over to inspect the damage to the bus. Roel eventually hailed a police officer who was traveling in the area. The officer traveled back towards where the collision occurred and discovered Roberto's body. Roberto's boots were found undisturbed, as if he had just taken them off, just to the right of (or outside) the right hand shoulder line. Klinger testified that he saw the boots standing to the left of the shoulder line, in the highway. The parties dispute, and it is not clear from the record, exactly where the boots were originally found and at what point they may have been moved. After his death, Roberto's body was tested for the presence of alcohol. Three separate tests all revealed that the level of alcohol in his body was in excess of the .08 legal limit for driving. Roberto had a blood alcohol level of .11, a vitreous alcohol level of .14, and a urine alcohol level of .15.

The Chavarrias brought a wrongful death suit against Valley Transit alleging causes of action for the negligence of the company as well as the negligence of its agent, Roel. The case was tried to a jury which returned a verdict finding no negligence on the part of Valley Transit. Thereafter, the trial court entered judgment that the Chavarrias take nothing from Valley Transit.

The Chavarrias filed several post-verdict motions attacking the trial court's judgment, including a motion for new trial. In the motion for new trial, the Chavarrias alleged the following instances of juror misconduct: (1) that juror John Tijerina ("Tijerina") concealed his bias concerning lawsuit abuse during voir dire and propagated his view to other members of the jury; and (2) that presiding juror, Maria Garza ("Garza"), despite the court's instructions to the contrary, improperly viewed and investigated the accident scene, which she used to persuade the jury. In support of their motion, the Chavarrias included the affidavits of jurors Jose Perez, Jr. ("Perez") and Mauricio Gonzalez ("Gonzalez"). The trial court held an evidentiary hearing on the motion and heard testimony from both Perez and Gonzalez. The trial court denied the motion for new trial.

### DISCUSSION

### I. Juror Misconduct

■ "We review a trial court's ruling on a motion for new trial under an abuse of discretion standard of review." *Rodriguez v. United Van Lines, Inc.*, 21 S.W.3d 382, 384 (Tex.App.-San Antonio 2000, pet. denied). "A trial court abuses its discretion when it acts unreasonably or without regard for any guiding legal principles." *Id.*

■ "To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex.2000). Certain evidence is inadmissible to prove jury misconduct in a motion for new trial. Both the Texas Rules of Civil Procedure and Rules of Evidence prohibit a juror from testifying as to any matter or statement occurring during the course of the jury's deliberations. TEX.R. CIV. P. 327(b); TEX.R. EVID. 606(b). Rules 327(b) and 606(b), however, do not bar juror testimony about conversations during a trial break. *Golden Eagle Archery, Inc.*, 24 S.W.3d at 372. The term "deliberations" means formal deliberations-when the jury weighs the evidence to arrive at a verdict, and not incidental discussions that might

occur between jurors during trial. *Id.* at 371. "[W]hile failure to disclose bias is a form of juror misconduct that justifies a new trial under the appropriate circumstances, proof of a juror's failure to disclose bias must come from some source other than a fellow juror's testimony about deliberations." *Id.* Likewise, a juror may not testify about jury misconduct, such as improperly viewing the scene of an accident, if it requires delving into deliberations. *Id.* at 370.

■ Valley Transit argues that there is no admissible evidence of jury misconduct, and thus the Chavarrias cannot meet the requirements of *Golden Eagle Archery*. In their affidavits, both Perez and Gonzalez stated that Garza informed the other jurors of her visiting the accident scene during the jury's "initial deliberations." The affidavits do not specify when Tijerina made his comments to the jury concerning lawsuit abuse. At the evidentiary hearing on the motion for new trial, Perez and Gonzalez were not exactly sure at what point in time Garza and Tijerina made their respective comments, but stated that they were made during "breaks." However, on cross-examination, both jurors admitted that the statements were made after the jury had begun deliberations.

Although the statements appear to have been made during breaks, they were breaks during deliberations. To the contrary, the statements were not merely "incidental discussions" that occurred between jurors during trial. *See Golden Eagle Archery, Inc.,* 24 S.W.3d at 371. There are no cases addressing this exact issue, but we believe that jurors discussing the case on breaks during deliberations is the same as deliberations themselves. While the facts of the present case are unique, the evidence of jury misconduct does require "delving into deliberations," and thus fits squarely within

the Texas Supreme Court's holding in *Golden Eagle Archery. See id.*

The Chavarrias have failed to present any admissible evidence of jury misconduct. As such, they cannot prove that misconduct occurred. *See id.* at 372. The trial court did not abuse its discretion in denying the Chavarria's motion for new trial. *See Rodriguez,* 21 S.W.3d at 384.

## II. Factual Sufficiency

■ · "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

The Chavarrias argue that the jury's finding of no negligence on the part of Valley Transit and its agent, Roel, is against the great weight and preponderance of the evidence. They contend that the greater preponderance of the evidence established that: (1) Roel was not wearing corrective lenses required by his driver's license; (2) he failed to keep a proper lookout; and (3) he failed to stop and render aid.

■ The crux of the Chavarria's case centered on where Roberto was standing when he was struck by the Valley Transit Bus. Klinger, the only person to actually witness the accident, testified that Roberto was standing to the left of (or inside) the right hand shoulder line. Leonard Vaughan, the Chavarria's accident reconstruction expert, admitted on cross-exami-

nation that he could not be sure where Roberto was standing when he was hit. There was conflicting evidence regarding where Roberto's boots were found or at what point they may have been moved. Consequently, the jury had ample evidence from which to deduce that Roberto was walking or standing in the right hand lane of the highway, and not the shoulder, when he was struck by the Valley Transit bus.

The record does not indicate that Roel was driving erratically or beyond the posted speed limit when the accident occurred. Klinger testified that Roel was not swerving or weaving while driving. Klinger testified that he barely saw Roberto before he was hit. The evidence showed that Roberto was wearing a red shirt and dark blue jeans when he was killed. Roberto did not come into view until approximately 50 feet before impact. Had Roel seen Roberto, he would have had a mere split second to react. There was also evidence that Roberto had been drinking that night, and the tests performed after his death showed that the amount of alcohol in his body was beyond the legal limit for driving. Klinger also testified that Roberto was standing, hunched over as if he was asleep on his feet, when the bus hit him.

The Chavarrias presented evidence that Roel's driver's license required him to wear corrective lenses, and that he was not wearing them when the accident occurred. However, Roel recently had undergone successful cataract surgery and was no longer required by his doctor to wear corrective lenses. Shortly after the accident, Roel renewed his license with the Texas Department of Transportation which did not contain a restriction requiring him to wear corrective lenses.

Considering the evidence as a whole, it was within the province of the jury to return a verdict finding Roberto 100% responsible for the accident. The Chavarri-

as have failed to demonstrate the jury's verdict was so against the great weight and preponderance of the evidence to be clearly wrong and unjust. *See Id.*

### CONCLUSION

The judgment of the trial court is affirmed.