**Grover Don HENRY, Appellant,**

v.

**HALLIBURTON ENERGY SERVICES, INC., Appellee.**

**No. 05–02–00807–CV.**

Court of Appeals of Texas, Dallas.

Feb. 4, 2003.

Rehearing Overruled April 15, 2003.

---

506

John E. Wall, Jr., Law Offices of John E. Wall, Jr., Dallas, for appellant.

Julie I. Ungerman, Stuart B. Johnston, Dallas, for appellee.

Before Chief Justices THOMAS, CORNELIUS,[1] and BOYD.[2]

**OPINION**

Opinion by Chief Justice BOYD.

Presenting two issues for our decision, appellant Grover Don Henry (Henry) challenges a trial court order confirming an arbitration award in favor of Halliburton Energy Services, Inc. (Halliburton). In his two issues, Henry questions whether the trial court erred in denying his motion to vacate the arbitration award and his motion for new trial/reconsideration when: (1) the evidence established the arbitrator's partiality and (2) there was clear and convincing evidence of fraud. For reasons we later recount, we affirm the judgment of the trial court.

In January 1999, Halliburton terminated Henry following a suit in which Henry alleged age and disability discrimination. Under Halliburton's dispute resolution plan, the matter was referred to arbitration through the American Arbitration Association (AAA). Henry agreed that Attorney Mark Shank, at the time employed by Clark, West, Keller, Butler & Ellis, would serve as arbitrator. The arbitration

hearings were held on October 24, 2000 and November 29, 2000. During the course of the proceedings, Henry filed a motion seeking sanctions on the ground that Halliburton failed to produce requested documents, including a company lay-off list with Henry's name on it. On May 29, 2001, Shank sent a letter to Christie Cotterman, AAA's case administrator for Henry's arbitration proceeding, in which he advised her that he was going to be working at the Hughes & Luce law firm. Henry was not sent a copy of the letter. Cotterman did not tell her supervisor, Agene Galanty, of the change Shank was making, nor did she tell Henry of the change. Had she told Galanty, he averred he would have told Henry.

On June 1, 2001, Shank did join Hughes & Luce. That law firm had represented Halliburton some seven years earlier in an employment discrimination case that yielded over $300,000 in attorneys' fees. Hughes & Luce had run a conflicts check prior to the time Shank went to work for them and discovered the potential Halliburton conflict. However, they did not tell Shank about the earlier representation because the firm believed Shank would deliver his decision in the arbitration case before he became affiliated with Hughes & Luce. Parenthetically, the two Hughes & Luce lawyers who worked on the earlier Halliburton case were no longer employed by the firm at the time of Henry's arbitration proceeding.

On June 26, 2001, Shank made an arbitration award in favor of Halliburton on the merits. With regard to Henry's sanctions motion, although Shank found that Halliburton's failure to deliver the documents was "inappropriate," he found there

1. The Honorable William J. Cornelius, Chief Justice, retired, Sixth District Court of Appeals, Texarkana, Texas, sitting by assignment.

2. The Honorable John T. Boyd, Chief Justice, retired, Seventh District Court of Appeals, Amarillo, Texas, sitting by assignment.

was no actionable malfeasance on Halliburton's part. However, Shank did award Henry his attorney fees for time spent relating to the nonproduction of the requested documents.

Three months after the award, Henry filed suit seeking to have the arbitration award vacated based of Shank's evident partiality. Halliburton filed an answer and counterclaim, seeking to have the arbitration award confirmed. Henry then filed a motion to vacate the award. In February 2002, at an evidentiary hearing on the motion, Halliburton produced Shank's May 29, 2001 letter from himself to Cotterman. Prior to that time, Henry did not know the letter existed. Subsequent to the hearing, the trial court denied Henry's motion to vacate and granted Halliburton's motion to confirm the award.

Henry then filed a motion seeking new trial/reconsideration in which he alleged newly discovered evidence relating to his evident partiality claim as well as a new claim that Halliburton fraudulently procured the arbitration award by failing to disclose that it had shredded requested documents. He supported his motions by submitting a letter from Galanty in which Galanty stated that to the best of his recollection, the AAA was not notified of Shank's move to Hughes & Luce until the day after Shank had issued his award.

In April 2002, at the evidentiary hearing on Henry's motions, Galanty reaffirmed the substance of his letter. At the hearing, Halliburton Secretary Hazel Ann Porter testified that the shredded files had to do with employees who were laid off in January 1999 and none of them concerned Henry. After the hearing, the trial court denied Henry's motions and entered judgment confirming the arbitration award. This appeal then ensued.

## Evident Partiality

As we have noted, in his first issue, Henry asks us to determine if the trial court erred in denying his motion to vacate and his motion for new trial/reconsideration when the evidence conclusively established Shank's evident partiality. He specifically argues "evident partiality" existed when: (1) Shank failed to disclose to Henry that he had changed firms during the pendency of the arbitration and was now working for a firm that had represented Halliburton in the past; and (2) Shank did not obtain Henry's consent to continue as the arbitrator after joining Hughes & Luce. Conversely, Halliburton argues no evident partiality was shown and none existed.

Our review of a confirmation of an arbitration award is *de novo. Amer. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App.-Dallas 2002, pet. denied). In doing so, in a case such as this in which there are no findings of fact and conclusions of law, we presume the trial court found any disputed fact issues in a manner necessary to support its judgment, and we affirm the judgment on any valid legal theory supported by the pleadings and evidence. *Id.*

It is established that a trial court shall vacate an arbitration award if a neutral arbitrator exhibits "evident partiality." *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 629–30 (Tex.1997). A neutral arbitrator selected by the parties exhibits evident partiality if the arbitrator does not disclose facts that might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *See id.* at 636 (holding that neutral arbitrator's failure to disclose his acceptance of a substantial referral from the law firm of a non-neutral co-arbitrator during the course of arbitration established evident partiality as a matter of law). The disclosure standard

applies to conflicts arising during the course of an arbitration proceeding. *Id.* at 637. Evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias. *Id.* at 636. While a neutral arbitrator need not disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure. *Id.* at 637.

Here, the trial court determined that Shank's nondisclosure would not create a reasonable impression of partiality to an objective observer. While Henry was required to present the trial court with evidence of facts that might create a reasonable impression of partiality by Shank,[3] he was not required to prove actual bias or prejudice in favor of Halliburton. *See Tex. Commerce Bank v. Universal Technical Inst. of Tex., Inc.,* 985 S.W.2d 678, 681 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.).

■ Although Shank did not disclose to Henry or Halliburton that he was changing firms, he disclosed that information to the case administrator handling Henry's arbitration case.[4] Shank did not know Hughes & Luce had previously represented Halliburton, and the attorneys who worked on that case were no longer with the firm at the time of Henry's arbitration proceeding. Unlike the arbitrator in *Tex-as Commerce Bank,* Shank was not lead counsel in the earlier Halliburton case. *See Tex. Commerce Bank,* 985 S.W.2d. at 681. Additionally, unlike the "repeated and significant" relationship found in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 146, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), Hughes & Luce did not perform any legal services for Halliburton after June 1994, more than six years before Henry's arbitration proceeding took place and seven years before Shank joined Hughes & Luce. Based on these facts, we conclude the prior relationship between Shank, Hughes & Luce, and Halliburton would not reasonably have created an impression of partiality. That being so, the trial court did not err in denying Henry's motion to vacate the arbitration award.

Based on the same evident partiality ground, Henry also argues the trial court erred in denying his motion for new trial/reconsideration. However, for the reasons we have expressed above, the trial court did not abuse its discretion in denying this motion. *See Chavarria v. Valley Transit Co., Inc.,* 75 S.W.3d 107, 110 (Tex. App.-San Antonio 2002, no pet.) (we review a trial court's ruling on a motion for new trial under the abuse of discretion standard of review, and a trial court abuses its discretion when it acts arbitrarily or without regard of any guiding legal principles).

3. Henry stated in his affidavit that had he known that Shank had joined Hughes & Luce, he would not have agreed to allow him to continue acting as the arbitrator in his case. Likewise, he averred, had Shank been employed by Hughes & Luce at the time he selected the arbitrator, he would not have selected Shank. However, these are subjective facts and are not sufficient to meet the objective standard outlined in *TUCO. See TUCO,* 960 S.W.2d at 639.

4. Shank asserts he disclosed his move to Hughes & Luce to AAA by facsimile on May 29, 2001, which preceded his issuance of the June 26, 2001 arbitration award. However, Galanty testified AAA did not receive that letter until after June 26, 2001. We cannot determine from the record whether Cotterman received the facsimile or whether she received it but failed to forward that information on to Galanty and Henry. Henry argues that it does not matter where the fault lies (AAA or Shank), the result was the same, namely, he did not receive any notice of Shank's change in law firms.

**510**

The answer to Henry's first issue question is no, the evidence did not establish the arbitrator's partiality.

### Fraud

 In his second issue, Henry asks if the trial court erred in denying his motion for new trial/reconsideration when there was clear and convincing evidence of fraud committed by Halliburton's admitted shredding of documents relating to the January 1999 layoffs. Again, we review the trial court's action under an abuse of discretion standard. *See id.*

To vacate an arbitration ruling because of fraud, the movant must establish: (1) fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and (3) the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration. *See In re Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. and Exp. Corp.*, 978 F.Supp. 266, 304 (S.D.Tex.1997), *aff'd*, 161 F.3d 314 (5th Cir.1998). In this case, Porter testified that she only shredded those documents pertaining to employees in the Subsurface Safety Valve Unit who were laid off in January 1999. Henry worked in the Subsurface Flow Control Business Unit. Because Porter only had access to employees in the Subsurface Safety Valve Unit, a unit to which Henry did not belong, she did not have access to Henry's files, and the files she shredded were not Henry's. She also averred that she looked at the names on the files before she shredded them and had she noticed the name of someone who worked for a unit other than the Subsurface Safety Valve Unit, she would have returned the file to the appropriate secretary working with the other unit. Because the shredded files were not material to Henry's case, Henry did not prove all the required elements of fraud before an arbitration award could be vacated. Accordingly, the trial court did not err in denying Henry's motion for new trial/reconsideration on the basis of alleged fraud. We resolve the second issue against Henry.

In sum, because of our negative answers to each of Henry's issue questions, we must, and hereby do, affirm the judgment of the trial court.