NO. 07-06-0207-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 23, 2007
_____

TOM H. WHITESIDE, APPELLANT

V.

CARR, HUNT & JOY, L.L.P., DONALD M. HUNT,
LATRELLE BRIGHT JOY AND GARY BELLAIR, APPELLEES
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-528,060; HONORABLE WILLIAM SOWDER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Tom H. Whiteside appeals a final order confirming an arbitration award and denying his motion to compel production of documents in a dispute over the method used to calculate payments due Whiteside from the law partnership of which he formerly was a member. Appellees are the former partnership, Carr Hunt & Joy, L.L.P. (CHJ) and three of its former members, Donald M. Hunt, Latrell Bright Joy and Gary Bellair. We affirm the trial court's order.

FACTS[1]

By a letter dated October 31, 2000, Whiteside withdrew from CHJ after learning of his partners' plans to join another firm. The following day, three members of CHJ began practicing law with the firm of Mullin Hoard Brown (MHB).[2] Whiteside brought suit in October 2004 against the CHJ partnership and his former partners individually for breach of the partnership agreement. The dispute centers around his claim that the partnership agreement entitles him to a greater payment for CHJ's collected accounts receivable than he has received.

By a provision of the partnership agreement, the CHJ partners agreed to submit any dispute arising from the conduct of the affairs of the partnership to binding arbitration pursuant to the Texas General Arbitration Act (TGAA). Citing the arbitration provision, Hunt and Joy sought to stay the litigation and compel arbitration. The trial court granted that request in an agreed order directing the parties to arbitrate "the partnership payment claim asserted by Whiteside[.]"

The parties selected an arbitrator who conducted an arbitration hearing in September 2005. At that hearing the parties entered a written agreement and stipulation,

---

[1] Our recitation of the facts and procedural background of the case comes largely from this Court's memorandum opinion denying a petition for writ of mandamus brought by Whiteside. *In re Whiteside*, No. 07-06-0078-CV, 2006 WL 1519430 (Tex.App.–Amarillo June 6, 2006, orig. proceeding).

[2] As we later discuss, Whiteside contends the circumstances raise the issue whether this action constituted a merger of the partnerships or acts of the former partners individually. The record indicates Whiteside's former partners occupied the same offices and used the same office staff and equipment as they used in the CHJ partnership.

to which we will refer as the "submission agreement," to distinguish it from the partnership agreement. The submission agreement recited that, after November 1, 2000, Whiteside had not been paid pursuant to a particular paragraph of the partnership agreement but had instead been paid his "participation percentage" of the firm's accounts receivable actually collected less his proportionate part of the expenses. The submission agreement provided that the parties agreed to submit to the named arbitrator "the issue of liability, if any, for breach of contract of the agreement of general partnership pursuant to [the particular paragraph] based on a proper construction of the agreement of general partnership, the paragraph in issue and the applicable law, jurisdiction and affirmative defenses." Significantly, the submission agreement further provided, "The parties agree that no evidence other than the contract will be considered at this hearing and the arbitrator will render a decision as a matter of law."

At the hearing, the parties further stipulated to the authenticity of a copy of the partnership agreement and that Hunt, Joy and Bellair began practicing with MHB on November 1, 2000. The parties subsequently submitted briefs supporting their respective positions. In October 2005 the arbitrator issued his decision finding there was no breach of the partnership agreement. Through correspondence Whiteside urged reconsideration on the basis that determination of whether the agreement had been breached required consideration of evidence concerning any negotiations between MHB and his former partners. Specifically, he argued the evidence would show a merger between the CHJ partnership and MHB, supporting his view there was no dissolution of the CHJ partnership and the merged partnership was liable for payments in accordance with the CHJ

3

agreement. The arbitrator denied the request to reconsider his ruling, citing the provision of the submission agreement limiting the evidence he could consider.

In January 2006, Whiteside filed two motions in the trial court, seeking to have the court vacate the arbitration award and to "submit documents *in camera*." The second motion did not request permission to submit documents, but sought to have the trial court require CHJ and the other partners produce documents regarding their "dealings" with MHB between June and November 2000. The trial court denied both motions, confirmed the arbitration award, and rendered a take-nothing judgment against Whiteside in an order signed February 13, 2006. Whiteside now appeals that order.

LAW AND ANALYSIS

By his first issue, Whiteside asks us to determine whether the trial court erred in denying his motion to vacate the arbitration award. There is no dispute the arbitration proceeding, and our review of the trial court's action, are governed by the TGAA. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2005).[3] That act protects the enforceability of written agreements to resolve disputes through binding arbitration. A trial court's review of an arbitration award is limited and deferential. *Universal Computer Systems, Inc. v. Dealer Solutions, L.L.C.,* 183 S.W.3d 741, 752 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). On request of a party the court must confirm an award unless

---

[3] Both parties also cite Texas and federal court cases applying the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. State and federal jurisprudence in this area is largely consistent and the well-developed federal jurisprudence is instructive. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 780 (Tex. 2006) (state and federal acts can apply simultaneously).

grounds for vacating, modifying or correcting the award are shown. Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (Vernon 2005); *Women's Regional Healthcare v. Fempartners of North Texas*, 175 S.W.3d 365, 367 (Tex.App.–Houston [1st Dist.] 2005, no pet.). Section 171.088 lists the grounds on which an award may be vacated. When reviewing an arbitration award, every reasonable presumption must be indulged to uphold the arbitrator's decision, and none is indulged against it. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002), citing *San Antonio v. McKenzie Const. Co.*, 136 Tex. 315, 150 S.W.2d 989, 996 (1941). Review is so limited that a court may not vacate an arbitration award even if it is based on a mistake of fact or law. *Vernon E. Faulconer, Inc. v. HFI Ltd. Partnership.*, 970 S.W.2d 36, 39 (Tex.App.--Tyler 1998, no pet.). Judicial scrutiny focuses on integrity of process rather than propriety of result. *TUCO Inc. v. Burlington Northern RR. Co.*, 912 S.W.2d 311, 314 (Tex.App.–Amarillo 1995), *modified*, 960 S.W.2d 629 (Tex. 1997). An appellate court's review of the trial court's confirmation of the arbitration award is de novo. *Werline v. E. Tex. Salt Water Disposal Co.*, No. 06-06-0039-CV, 2006 WL 3715907 (Tex.App.–Texarkana December 18, 2006, no pet. h.) (applying Texas common law). *See also Henry v. Halliburton Energy Services, Inc.*, 100 S.W.3d 505 (Tex.App.--Dallas 2003, pet. denied) (applying de novo standard in appellate review of order confirming award but reviewing ruling on motion for new trial for abuse of discretion).

Whiteside sought vacatur on three statutory grounds: (1) the arbitrator refused to hear evidence material to the controversy; (2) the arbitrator exceeded his powers; and (3) the award was obtained by undue means. Tex. Civ. Prac. & Rem. Code Ann. §

171.088(a)(1), (3)(A), (3)(C) (Vernon 2005). His arguments in support of each ground are based on the absence of evidence of appellees' dealings with the MHB firm prior to Whiteside's withdrawal from CHJ. He argues the arbitrator could not have determined whether the CHJ firm dissolved or merged with MHB without evidence of the communications between appellees and MHB, and rendition of an award without any evidence on that issue exceeded the arbitrator's powers. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(3)(A) (Vernon 2005). Because, Whiteside contends, the evidence sought was necessary to the arbitrator's decision, the refusal to consider it requires vacatur under section 171.088(a)(3)(C). The "undue means" on which he relies is CHJ's "withholding of its dealings with MHB" over proper requests for the documents. He characterizes this as fraudulent conduct which required vacatur under section 171.088(a)(1).

Appellees primarily rely on the submission agreement's limitation on the evidence to the partnership agreement and the parties' stipulated facts. Whiteside presents no challenge to the validity of the submission agreement. He seeks to avoid the agreement's evidentiary limitation by arguing the "arbitrator is not limited to what the parties agree or what information he is given," citing sections 171.050 and 171.051 of the TGAA. He also cites *Mewbourne Oil Co. v. Blackburn*, 793 S.W.2d 735 (Tex.App.–Amarillo 1990, orig. proceeding), for the proposition that the arbitrator was "empowered to cause the discovery necessary to resolution of the issues before [him]." *Id.* at 737.

We reject Whiteside's view that minimizes the role of the submission agreement. An arbitrator's authority arises from the agreement of the parties. *Peacock v. Wave Tec*

6

*Pools, Inc.*, 107 S.W.3d 631, 636 (Tex.App.–Waco 2003, no pet.).  A purpose of the TGAA is to ensure the enforceability of arbitration agreements.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (Vernon 2005).  Parties have wide latitude in structuring an arbitration proceeding through their agreement.  *See TUCO*, 912 S.W.2d at 314 (citing FAA).  Courts have given effect to arbitration agreements altering whether the question of arbitrability is one for the court or the arbitrator, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), what procedural rules would apply, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 477-78, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), and even the standard for and extent of judicial review, *Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996 (5th Cir. 1995); *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 590 (5th Cir. 2001); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 251 (Tex.App.–Houston [14[th] Dist.] 2003, pet. denied) (applying federal arbitration law).

In view of the parties' express agreement limiting the evidence to be considered by the arbitrator, the trial court did not err in declining to vacate the arbitrator's award on the grounds he exceeded his powers or refused to hear material evidence by giving effect to the agreement.[4]  *See IPCO-G & C v. A.B. Chance Co.*, 65 S.W.3d 252, 259 (Tex.App.– Houston [1[st] Dist.] 2001, pet. denied) (court rejected challenge to award based on arbitrator's refusal to consider post-hearing evidence, relying on provisions of governing

_____

[4] Indeed, had the arbitrator disregarded the submission agreement his award could be subject to challenge on the basis he exceeded his powers.  *See, e.g., International Union of Operating Engineers v. Cooper Natural Resources*, 163 F.3d 916, 919 (5th Cir. 1999) (holding arbitrator did not have authority to ignore the parties' agreement in making award).

agreement granting arbitrator authority to determine relevance of evidence). Neither the general provisions of the TGAA allowing arbitrators to authorize depositions, § 171.050, and issue subpoenas, § 171.051, nor the opinion in *Mewbourne Oil* suggest a contrary conclusion.

Whiteside's third ground argues appellees' "withholding" of information of dealings with MHB was fraud requiring the trial court to vacate the award. He relies on *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004), *cert. denied*, 543 U.S. 917, 125 S.Ct. 59, 160 L.Ed.2d 202 (2004), and *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391 (5th Cir. 2003). In *Karaha Bodas* the court recited a three-pronged test for determining if an arbitration award was procured by fraud. *Id.* at 307. It requires a movant to establish (1) the fraud by clear and convincing evidence, (2) that it was not discoverable before or during the arbitration, and (3) the fraud materially related to an issue in the arbitration. *Id.* The issue in *Prestige Ford* concerned the production of altered documents by a party in the course of an arbitration proceeding. The trial court and Fifth Circuit affirmed the award because the arbitrators declined to compel production of the documents, considered the argument the documents had been altered and reached a decision independent of the alleged fraud. *Id.* at 394-95. Under this record, neither case supports Whiteside's first issue.

Whiteside contends he properly requested the information through discovery and it was wrongly withheld by appellees. As evidence of his requests for the records, Whiteside points to electronic mail exchanges. A March 2005 message to Whiteside from

Hunt addressed several matters, including Whiteside's request for information concerning his former partners' dealings with MHB before Whiteside's withdrawal from CHJ. A second message from Hunt represented "the only contractual matter between CHJ and MHB" concerned the sale of equipment and office supplies and denied knowledge of other records or agreements between the firms. That message also declined to provide records concerning the other partners' "individual entry into MHB[.]"

Assuming, without deciding, that the test for fraud set out in *Karaha Bodas* is applicable under the TGAA,[5] the record here does not establish the elements of that test. Like in *Karaha Bodas,* the conduct Whiteside challenges was known before the arbitration hearing, precluding him from satisfying the second element. Far from pursuing his outstanding requests at the arbitration hearing, Whiteside entered into the submission agreement, including its express provision limiting the evidence to be considered. The agreement negates his assertion that appellees "wrongly" withheld the records. *See Karaha Bodas*, 364 F.3d at 304 (noting representation at conclusion of arbitration hearing that record had been "fully made").

Whiteside's contention the arbitrator had no evidence on which to decide whether the partners' actions constituted a dissolution or a merger with MHB without examination of CHJ's records of "dealings" with MHB is, at bottom, an attack on the sufficiency of the evidence on which the arbitrator based his decision. Having reviewed the entirety of the materials presented the trial court, we find the court reasonably could have considered

---

[5] The same test has been applied by at least one Texas court of appeals. *See Henry*, 100 S.W.3d at 510.

Whiteside's arguments for vacatur as an effort to bootstrap an evidentiary sufficiency complaint into a statutory ground for vacatur. *See J. J. Gregory Gourmet Services, Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex.App.–Houston [1st Dist.] 1995, no writ) (absent statutory ground to vacate arbitrator's award, a complaint about sufficiency of the evidence to support the award provided the trial court no basis on which to vacate it). We find the trial court did not err in rejecting Whiteside's grounds for vacation of the award, and overrule his first issue.

Whiteside's second issue assigns error to the trial court's failure to order production of documents concerning dealings between CHJ and MHB for *in camera* review. Whiteside points to the authority given a trial court under section 171.086 of the TGAA to order discovery even after conclusion of the arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.086(b). We will apply an abuse of discretion standard to our review of the trial court's denial of Whiteside's motion to require the document production.[6] A court may abuse its discretion by ruling arbitrarily, unreasonably or without reference to any guiding rules and principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex. 1986); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Here, the court had before it the unchallenged submission agreement limiting the evidence to be considered by the arbitrator. We hold the trial court did not err in declining Whiteside's motion to compel production of documents for *in camera* review and overrule his second issue.

---

[6] Subsection (a) of 171.086 expressly commits to the trial court's discretion pre-arbitration rulings on discovery and "other relief." Subsection (b) does not indicate any different standard should apply to rulings made during or after arbitration.

10

Whiteside's third issue recasts the argument presented in his second issue and is likewise overruled, as is his pending motion seeking the same relief in this Court.[7] Having overruled Whiteside's issues, we affirm the judgment of the trial court.


James T. Campbell
Justice

---

[7] Whiteside also filed a motion asking that we supplement the record in this appeal with "sealed" documents contained in the record in the mandamus proceeding, *In re Whiteside*, No. 07-06-0078-CV, 2006 WL 1519430 (Tex.App.–Amarillo June 6, 2006, orig. proceeding). That motion is granted.