Opinion issued August 31, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00059-CV

———————————

Thomas E. Swonke, Appellant

V.

Patrick L.
Swonke, Appellee



 



 

On Appeal from the 280th District Court

Harris County, Texas



Trial Court Case No. 2008-30871

 



 

MEMORANDUM OPINION

Appellant, Thomas E. Swonke,
challenges the trial court’s judgment in favor of appellee, Patrick L. Swonke,
denying Thomas’s application for a court order suspending arbitration,
disqualifying an arbitrator, and setting aside any action by the arbitrator.  In a single issue, Thomas contends that the
evidence is legally and factually insufficient to support the trial court’s implied
finding that the arbitrator should not be disqualified for “evident
partiality.”[1]

We affirm.

Background

Thomas and
Patrick Swonke, who are brothers, jointly ran a dental practice through an
entity named “SLSS, LLC.”  After the
brothers decided to separate their practices they were unable to agree
regarding the distribution of income and expenses from SLSS.  Patrick sued Thomas, asserting that the
income and expenses had not been allocated according to their oral
agreement.  Ultimately, in lieu of
pursuing his lawsuit, Patrick agreed to arbitrate the dispute.  Thomas and another brother, Terry Swonke,
proposed to Patrick that the arbitrator be James Roberston, who had eighteen
years of experience brokering dental practices. 
Patrick knew about Robertson, but he had had no prior “business
dealings” with him before the brothers agreed on him as their arbitrator.  

As a part of the negotiation of their
arbitration agreement, the brothers contemplated that Robertson would provide
“transition services” for the potential sale of either brother’s portion of
SLSS to the other or to a third party. 
On January 22, 2007, Robertson sent to Patrick and Thomas an “engagement
of services” letter, in which he stated, “Thank you for selecting me to provide
arbitration and transition services” and “the standard fees for the transition
of a dental practice through a Buy/Sell is ten per cent for the seller and
$6,000.00 for the buyer.”  Patrick signed
his agreement to the terms of Robertson’s engagement as a broker.

On March
22, 2007, Thomas signed the separate Arbitration Agreement (the “Agreement”),
which provided that Robertson, who had “no other or prior business or other
relationship of any kind” with either brother or their attorneys, would be the
arbitrator.  The brothers would “forego a
trial” of Patrick’s claims against Thomas and submit to binding arbitration the
issue of “the proper balancing of accounts between [Patrick] and [Thomas]
related to their combined dental practice based on their prior agreements as to
the manner in which income and expenses would be allocated.”  The Agreement did not include a provision
regarding transition or brokerage services.   

On April 3,
2007, Robertson sent to Thomas an “engagement of services” letter (the “Engagement
Letter”), in which he stated, “Thank you for selecting me to provide
arbitration and transition services” and “the standard fees for the transition
of a dental practice through a Buy/Sell is ten per cent for the seller and
$6,000.00 for the buyer.  These fees
would apply should either doctor choose to buy or sell their practice or a
portion thereof as a part of a buyout of the other party or to a third party.”  Thomas signed the Engagement Letter,
indicating his agreement to Robertson’s engagement as a broker.

In December
2007, Robertson brokered Patrick’s “equity” portion of SLSS to a third party for
a maximum sales price of $139,000.  Patrick was to “earn” the sales price by
receiving monthly fifty percent of the revenue that he generated for the third
party for twelve months after the sale.  The
terms of sale provided Patrick an initial $39,000 “production payment,” but he had
to earn the payment by monthly crediting towards the “production payment”
thirty-five percent of the revenue that he generated until the amount was
reduced to zero.  The remaining fifteen
percent of his revenue would be credited towards the outstanding $100,000 of
the sales price.  After the $39,000
“production payment” was reduced to zero, the full fifty percent of the revenue
that Patrick generated would be credited towards the sales price until it
reached $139,000 or twelve months had elapsed.  Patrick, as the seller, agreed to pay to Robertson
his ten percent broker’s fee not as a lump sum but on a “contingency” basis,
i.e., based on the final sales price that the third party actually paid using
the above calculation.  At a maximum,
Robertson’s broker’s fee would be $13,900.

In February
2008, Robertson informed Thomas of the actual sale of Patrick’s portion of SLSS
and that he was preparing to make a ruling in the arbitration, which would
likely go against Thomas.  Thomas immediately
responded with a letter requesting that Robertson withdraw as arbitrator
because, by brokering Patrick’s practice to a third party, he had “engaged in a
previously undisclosed separate business relationship and transaction with
[Patrick], after undertaking to be arbitrator in this matter.”  Robertson refused to withdraw. 

On March 9,
2008, Robertson sent Thomas a letter informing Thomas that he was prepared to
include in his findings a judgment against Thomas in the amount of $100,000
because Thomas had claimed the “corporate asset” telephone number of SLSS as a
“personal asset” and had been using it for ninety days for his sole
benefit.  He stated that Thomas could
avoid the finding by transferring the phone number to Patrick’s control for
ninety days and then utilizing it as a “neutral asset” for the benefit of both
brothers after that time.  Thomas released
the telephone number to Patrick and wrote several more letters objecting to
Robertson’s continued service as arbitrator. 


On May 20,
2008, Thomas filed with the trial court an application for a court order
suspending arbitration and disqualifying Robertson.  Thomas alleged that Robertson should be removed
for his “evident partiality and bias” because Robertson, while serving as a
neutral arbitrator in the brothers’ dispute, engaged a “previously undisclosed”
“separate brokerage or other business transaction” with Patrick and then refused
to disclose to Thomas the detail of the brokerage fee paid by Patrick to
Robertson.  During discovery, Robertson
disclosed that his brokerage fee was to be paid by Patrick based on the amount
of dental services revenue that Patrick generated for the third party in the
year after the sale.

On October 29, 2008, Robertson
issued his findings and awards in the arbitration.  He determined that Thomas owed Patrick
$117,590.00 to correct an “imbalance in the accounts” of SLSS.  He further assessed punitive damages against
Thomas in the amount of $161,180.00 because “the amount owed of $117,590.00 or
even a portion thereof should have been paid without requiring [Patrick] to
resort to the courts.”

The trial court heard Thomas’s
application on January 8, 2009.  Thomas
testified that during the arbitration, Robertson had repeatedly inquired as to
whether Thomas would purchase Patrick’s portion of SLSS.  He denied that Robertson “ever disclosed”
before February 2008 that he might broker Patrick’s portion of SLSS to a third
party.  Thomas admitted that Robertson
“would be providing brokerage services,” but explained that “the only sale that
was ever discussed was a sale” between the brothers.  Thomas agreed that, at a meeting in February
2008, Robertson informed him that Patrick’s portion of SLSS had been sold to a
third party and Robertson was “ready to issue an award.”  

Robertson testified that he thought
that the best solution to the brothers’ dispute was for Thomas to purchase
Patrick’s portion of SLSS, but Thomas refused. 
Robertson explained that he had made Thomas aware “from the very
beginning” and “multiple times” during the arbitration that sale to a third
party was an option.  In June 2007,
Robertson first apprised Thomas of an “interested third party.”  Thomas never objected to Robertson’s negotiating
with a third party for the sale of Patrick’s portion of SLSS.  A few days before the sale to the third party,
Robertson called Thomas to tell him the sale to the third party was “moving
forward” and offered Thomas one last opportunity to buy Patrick’s portion of
SLSS.  Thomas again refused.  Robertson admitted that he initially refused
to disclose the terms of the sale to Thomas, explaining that the terms were
“privileged and confidential” to the buyer.

The trial court orally found that 

[T]he
Agreement allowed the arbitrator to do exactly what he did.  That may be a little unusual but it’s
nevertheless the agreement they made. 
The [A]greement . . . allowed [Robertson] to be a broker in the . . .
matter to sell the practice of either doctor and that it would go without
saying that he was going to get a fee for that. 
In fact, I think somewhere in there even says how the fee will be
figured. . . . [The trial court does] not believe that [Thomas] did not know that
[Robertson] was acting . . . as a broker for [Patrick] at the same time that he
was acting as an arbitrator.  [The trial
court believes] that [Thomas] did know. . . [but] did not necessarily know
exactly who the buyer was  . . . [and]
the arbitrator did not disclose the sale or the amount of the broker’s fee that
he would get, but [the trial court does] not consider those to be facts that
anybody has to have in this particular case since they’re all agreeing to this
unusual situation where they’re allowing [Robertson] to be a broker and an arbitrator
at the same time. . . . [The trial court does] not believe that [evident
partiality has been established] . . . [or] that [Robertson] was partial or
biased or that partiality or bias has been shown.

 

The trial court then entered its order denying Thomas’s
application, but the order did not include the trial court’s oral recitals.

Standard of Review

Whether a trial court should have
vacated an arbitration award is a question of law we review de novo.  Henry v.
Halliburton Energy Servs., Inc., 100 S.W.3d 505, 508 (Tex. App.—Dallas 2003, pet. denied); Thomas James Assocs., Inc. v. Owens, 1
S.W.3d 315, 319–20 (Tex. App.—Dallas 1999, no pet.). 
In doing so, in a case such as this where the litigants do not request
findings of fact or conclusions of law, we imply all findings necessary to
support the trial court’s judgment.  Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990); Henry, 100 S.W.3d at
508.  

Our review of an arbitration decision
is “extremely narrow” because Texas law favors arbitration.  IPCO-G.&C.
Joint Venture v. A.B. Chance Co., 65 S.W.3d 252, 256 (Tex. App.—Houston
[1st Dist.] 2001, pet. denied).  An
arbitration award has the same effect as a judgment of a court of last resort,
and a reviewing court may not substitute its judgment for that of the
arbitrator merely because it would have reached a different result.  J.J.
Gregory Gourmet Servs., Inc. v. Antone’s Imp. Co., 927 S.W.2d 31, 33 (Tex. App.—Houston
[1st Dist.] 1995, no writ).  Because
arbitration is favored as a means of dispute resolution, every reasonable
presumption must be indulged to uphold an arbitrator’s decision, and none is
indulged against it.  CVN Group, Inc. v. Delgado, 95 S.W.3d
234, 238 (Tex. 2002).  Review is limited such
that a trial court may not vacate an arbitration award even if it is based upon
a mistake of fact or law.  Universal Computer Sys., Inc. v. Dealer
Solutions, L.L.C., 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied).  In the absence of a
statutory or common law ground to vacate or modify an arbitration award, a
reviewing court lacks jurisdiction to review other complaints, including the
sufficiency of the evidence to support the award.  J.J.
Gregory Gourmet Servs., 927 S.W.2d at 33.  A trial court must confirm an arbitrator’s
award unless, on application of a party, grounds are offered for vacating the
award.  Tex.
Civ. Prac. & Rem. Code Ann. § 171.087 (Vernon 2005); see Delgado, 95 S.W.3d at 245.  

Evident Partiality

In his sole issue, Thomas argues that
the evidence is legally and factually insufficient to support the trial court’s
implied finding that Robertson “should not be disqualified for ‘evident
partiality’” because Robertson “failed to disclose that during the pendency of
the arbitration, [he] brokered the sale of [Patrick’s] dental practice and
retained as a brokerage fee a financial interest in the success of [Patrick’s]
practice.”  He further argues that he did
not waive his evident partiality objection because he objected to Robertson’s
continuing to serve as arbitrator right after Robertson disclosed that he had
sold Patrick’s portion of SLSS to a third party and Robertson had not yet
disclosed the terms of the sale until after Thomas had filed his application to
disqualify Robertson.

“On application of a party, the court
shall vacate an award if . . .  the
rights of a party were prejudiced by . . . evident partiality by an arbitrator
appointed as a neutral arbitrator . . . .” 
Tex. Civ. Prac & Rem. Code
Ann. § 171.088(a)(2) (Vernon 2005). 
A neutral arbitrator exhibits evident partiality if he “does not
disclose facts which might, to an objective observer, create a reasonable impression
of the arbitrator’s partiality.”  Burlington N. R.R. Co. v. TUCO Inc., 960
S.W.2d 629, 630 (Tex. 1997).  Evident
partiality is established from the nondisclosure itself, regardless of whether
the nondisclosed information necessarily establishes partiality or bias.  Id.
at 636.  In adopting a broad concept of
evident partiality, the Texas Supreme Court has explained that where parties
agree to select an arbitrator, they can do so intelligently only if they have
access to all information, such as a professional, familial, or close social
relationships, that might reasonably affect the arbitrator’s partiality.  TUCO,
960 S.W.2d at 635–37.  When the
arbitrator discloses such information, the parties can evaluate any bias at the
outset, “rather than shifting the burden to the courts to do so when a dissatisfied
party challenges an award.”  Id. at 635. 

Determining “evident partiality” is a
fact intensive inquiry, dependent on the particular facts of each case.  Mariner
Fin. Group, Inc. v. Bossley, 79 S.W.3d 30, 32 (Tex. 2002).  Additionally, the TUCO test is an objective test under which the consequences for
nondisclosure are directly tied to the materiality of the undisclosed
information.  Id.

Thomas asserts that Robertson failed
to disclose that he had sold Patrick’s portion of SLSS to a third party and the
terms of sale provided that his brokerage fee was “contingent,” which gave
Robertson a “financial interest in the continued success of Patrick’s practice”
during the arbitration.  We must
determine whether these non-disclosures might, to an objective observer, create
a reasonable impression of Robertson’s partiality.  See TUCO,
960 S.W.2d at 636.  

Failure to Disclose the Actual Sale

At the time Thomas suggested Robertson to Patrick as the
neutral arbitrator for their dispute over “dividing the accounts and assets of
the joint practice,” Thomas knew that Robertson was a broker of dental
practices.  Thomas additionally signed
the Engagement Letter in which he acknowledged, despite his testimony at the
hearing, that Robertson might broker either brother’s portion of SLSS to a
third party.  The Engagement Letter further
disclosed that “the standard fee for the transition of a dental practice
through a Buy/Sell is ten percent for the seller.”  As the trial court stated, allowing Robertson
to serve as arbitrator in the dispute and broker either brother’s portion of
SLSS might be a “little unusual”; nevertheless, it is the agreement that Thomas
and Patrick made.

Because the terms of the Engagement Letter contemplated a
third-party sale, the actual sale of Patrick’s portion of SLSS to a third party
was not, for Thomas, an unexpected outcome.  We hold that the evidence supports the trial
court’s implied finding that the fact that Robertson failed to disclose to
Thomas that he had done what the Engagement Letter allowed him to do did not
create a reasonable impression of Robertson’s partiality in his role as a
neutral arbitrator.  See id.

Nature of Robertson’s Broker’s Fee

Although the Engagement Letter
disclosed that Robertson was to be paid by the seller a ten percent broker’s
fee, it did not disclose that the fee might be contingent.  Thomas asserts that the contingent broker’s
fee that Robertson received created in him “a financial stake in the success of
Patrick’s practice” in the year after the sale to the third party and this
stake affected his neutrality.  Thomas
had agreed that Robertson was to provide not only arbitration services but also
transition services.  Thomas had further
agreed that Robertson, as broker, could sell either brother’s practice to a
third party and Robertson, as arbitrator, was “charged with dividing the
accounts and assets of the joint practice once held by the brothers.”  Robertson’s “financial stake” was not related
to Robertson’s role as arbitrator but as broker, and represented his ten
percent broker’s fee, which Thomas had already acknowledged Robertson would be
paid if he brokered the sale of either brother’s portion of SLSS.  Moreover, Robertson’s broker’s fee was only
“contingent” up to a maximum sales price of $139,000.  If Patrick generated for the third party more
than $278,000 in revenue (two times $139,000) in the twelve months after the sale,
Robertson’s broker’s fee could still not exceed $13,900, ten percent of the
maximum sales price to which Patrick had agreed.  An objective observer could reasonably conclude
that the contingent nature of Robertson’s broker’s fee did not create a
reasonable impression of Robertson’s partiality as arbitrator.

Thomas additionally asserts that Robertson’s partiality was
shown by his “threat to award Patrick $100,000 if Thomas refused to transfer
the telephone number for the joint practice [to Patrick] within 2 weeks of
Thomas objecting to Robertson’s continued participation,” and this threat
showed Robertson’s understanding that “he had [a] vested interest in Patrick’s
ability to bring patients to [the third party].”  In his letter to Thomas regarding the SLSS
telephone number, Robertson ordered that “full control [of the telephone
number] must be given to Dr. Pat Swonke for the next 90 days, the same amount
of time it has been controlled exclusively by Dr. Tom Swonke.  After about 90 days, it must have a neutral
recording that refers patients to each doctor for the next 18 months.  The costs will be equally shared by each
doctor.”  Robertson would certainly have
benefitted from Patrick’s exclusive control of the SLSS telephone number after
the sale because that would likely have increased the revenue generated by
Patrick for the third party, and, thus, increased Robertson’s broker’s
fee.  However, Robertson issued his order
to Thomas to transfer the telephone number to Patrick, not immediately after
the sale in December 2007, when it would have most positively impacted
Patrick’s revenue generation, but approximately four months later.  Moreover, Thomas brought no evidence to
dispute that he had been, as asserted by Robertson, using the SLSS telephone
number for his sole benefit.  An objective
observer could reasonably conclude that the motivation for Robertson’s order was
to equalize access to the SLSS telephone number and not to maximize his
broker’s fee.

Thomas further asserts that
Robertson’s issuance of an award in favor of Patrick in October 2008, “at the
very end of the contingent payment period,” demonstrated that he “was acutely
aware that resolution of [the arbitration] could impact Patrick’s ability to
generate revenue during the payment period and consequently impact Robertson’s
ability to maximize his brokerage fee.”  We
are unable to discern how any decision in the arbitration could have impacted Patrick’s
ability to generate revenue in the year after the sale.  Patrick had already been separately
practicing and generating revenue during the pendency of arbitration and before
the sale.  Even if Robertson had ruled
against Patrick, that would not have affected Patrick’s ability to generate
revenue because the arbitration dealt with balancing the accounts of the no
longer operational SLSS, not Patrick’s current practice.  An objective observer could reasonably conclude
that Robertson’s decision to issue an award against Thomas was not affected by
the contingent nature of his broker’s fee.

We hold that the evidence supports the trial court’s implied
finding that Robertson’s failure to disclose the contingent nature of his
broker’s fee, given that the brothers had agreed that Robertson would act both
as arbitrator and broker, would not, to an objective observer, create a
reasonable impression of Robertson’s partiality in his role as a neutral
arbitrator.  See TUCO, 960 S.W.2d at 636.

We overrule Thomas’s sole issue.

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.











[1]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 171.088(a)(2) (Vernon 2005).