

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00390-CV

**NAJDS PROPERTY INVESTMENTS, INC.,**
Appellant

v.

**THE DIMENSION GROUP** and Prudent Development, LLC,
Appellees

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI21888
Honorable Marylou Alvarez, Judge Presiding[1]

Opinion by:     Irene Rios, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                  Irene Rios, Justice
                  Adrian A. Spears II, Justice

Delivered and Filed: November 26, 2025

REVERSED AND REMANDED

Appellant NAJDS Property Investments, Inc. ("NAJDS") appeals the trial court's order

granting The Dimension Group's and Prudent Development, LLC's (collectively, "the appellees")

no-evidence motions for summary judgment. On appeal, the parties dispute whether the trial court

considered redacted emails timely filed with NAJDS's summary judgment responses or unredacted

---

[1] The Honorable Mary Lou Alvarez signed the final judgment which incorporated the order granting The Dimension Group's and Prudent Development, LLC's no-evidence motions for summary judgment. However, the Honorable Tina Torres presided over and signed the summary judgment that is being appealed.

versions of the same emails that were filed the day after the summary judgment hearing but before the trial court granted the no-evidence summary judgment motions. We conclude the record reflects an affirmative indication that the trial court permitted NAJDS to supplement the summary judgment evidence with the late filed unredacted emails and those unredacted emails were properly before the trial court when it granted summary judgment. Considering all the summary judgment evidence—including the unredacted emails—under the appropriate standard of review, we hold a genuine issue of material fact exists because NAJDS presented more than a scintilla of evidence to support its tortious interference and conspiracy causes of action. Accordingly, we reverse the trial court's order granting the appellees' no-evidence motions for summary judgment, and we remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

NAJDS owns property in Schertz, Texas. 7-Eleven, Inc. ("7-Eleven") entered into a commercial ground lease with NAJDS to lease the property so that 7-Eleven could develop a convenience store and gas station on the property. Although a convenience store already existed on the property, the record indicates 7-Eleven would have to renovate the existing convenience store and further develop the property for its use. According to the lease, 7-Eleven would bear the cost to renovate and further develop the property. This type of lease, where the tenant bears the cost of renovation and further development of the property, is called a ground lease.

The lease term would not commence until 7-Eleven satisfied all conditions precedent under articles 22 and 23 of the lease agreement. Relevant to this appeal, article 22(a) required 7-Eleven to promptly proceed with reasonable diligence to, among other things, collect construction bids to determine economic feasibility of the project and obtain all permits, licenses, and approvals necessary to develop and renovate the property to serve 7-Eleven's purposes. The lease agreement

refers to 7-Eleven's efforts to satisfy the conditions precedent in article 22 as "Due Diligence." Article 22(c) required each party to "fully cooperate with the other in seeking such permits, approvals and licenses[.]" But it also allowed 7-Eleven to terminate the lease at any time if, in 7-Eleven's reasonable business judgment, it determined a reasonable likelihood existed that it would not satisfy one or more of the initial conditions precedent in article 22(a), or that "development of the [property] . . . and/or permitting for such development or [7-Eleven's] intended use shall be commercially and/or economically impractical . . . ."

The construction addendum to the lease agreement granted 7-Eleven the right to make alterations, additions, or to construct new improvements on the leased property at 7-Eleven's "sole cost and expense." The addendum further stated 7-Eleven "agrees at its expense to promptly make application for all permits necessary for any construction to be performed by [7-Eleven] on the [leased property] which construction shall be in conformity with the Site Plan and [7-Eleven's] plans and specifications." The lease agreement granted 7-Eleven the right to apply for or obtain in NAJDS's name any permits or licenses required by governmental authorities for 7-Eleven to renovate and develop the property.

In November 2019, 7-Eleven retained The Dimension Group ("Dimension") to assist with the development of the leased property, including obtaining any necessary plans, designs, permits, licenses, and approvals related to the construction of the convenience store and gas station. However, the summary judgment evidence reflects that the Site Plan Application and Specific Use Permit Application were not filed with the City of Schertz until May 5, 2021, and even that submission was incomplete. In its petition, NAJDS alleges Dimension conspired with 7-Eleven and Prudent Development, LLC ("Prudent")—an entity that shares common ownership with Dimension—to intentionally delay the permitting process so that NAJDS would be pressured to

sell the property to Prudent and 7-Eleven could pursue a more lucrative lease agreement with Prudent after it purchased the property. NAJDS alleges the appellees' actions constituted a tortious interference with its lease agreement with 7-Eleven.

The appellees each filed no-evidence summary judgment motions alleging there was no evidence that either party conspired to tortiously interfere with the lease agreement. NAJDS filed timely responses. The trial court granted the no-evidence motions for summary judgment and rendered a take-nothing judgment in the appellees' favor. NAJDS appeals.

## STANDARD OF REVIEW

We review orders granting summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a no-evidence summary judgment, we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). "A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, the moving party asserts there is no-evidence of one or more essential elements of a claim or defense on which an adverse party has the burden of proof at trial and the nonmovant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements." *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 157 (Tex. App.—San Antonio 2008, pet. denied); *see also* TEX. R. CIV. P. 166a(i).

If the nonmovant brings forward more than a scintilla of probative evidence raising a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); TEX. R. CIV. P. 166a(i); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) ("A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced."). "[M]ore

than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ridgway*, 135 S.W.3d at 601 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

## DISCUSSION

NAJDS argues it provided more than a scintilla of evidence raising genuine issues of material fact to establish each element of its tortious interference and conspiracy claims. The parties, however, dispute whether the trial court considered unredacted emails that were filed the day after the summary judgment hearing. Before we can determine whether NAJDS met its summary judgment burden, we must first determine whether the unredacted emails are part of the summary judgment record and were accepted and considered by the trial court.

### A. The Unredacted Emails Were Included in the Summary Judgment Evidence

On May 27, 2022, the trial court signed an extensive, stipulated protective order to protect public disclosure of confidential information. The order states "[t]he parties . . . stipulate and agree that an order is necessary to protect the confidentiality of information and items obtained in the course of discovery in this [suit]." The order defined "protected information" as any information designated by the parties as confidential or for attorney's eyes only. Among other things, the protective order states that "[a]ny [p]arty seeking to file [p]rotected [i]nformation must do so under seal in accordance with the Court's procedures for filing under seal and Texas Rule of Civil Procedure 76a."

NAJDS sought to file email exchanges between representatives of 7-Eleven and the appellees as summary judgment evidence to support its tortious interference and conspiracy claims. However, those emails were designated as protected information by one of the parties to

the litigation. Under the protective order, NAJDS was not permitted to file the unredacted emails unless and until the trial court entered an order allowing the emails to be filed under seal.

On May 11, 2023, NAJDS timely filed summary judgment responses and attached redacted versions of the emails as summary judgment evidence to its summary judgment responses. That same day, NAJDS also filed a motion to seal the court records. The motion to seal clearly states the redacted emails attached to NAJDS's summary judgment responses were designated by an adverse party[2] as protected information and must be filed under seal pursuant to the trial court's protective order. On May 18, 2023, the trial court held a hearing on the appellees' no-evidence motions for summary judgment. At the end of the hearing, the trial court stated it was going to sign a temporary sealing order permitting NAJDS to file the unredacted versions of the same emails under seal. The next day, the trial court signed the temporary sealing order, and NAJDS filed the unredacted emails under seal.

On appeal, the parties dispute whether the trial considered the timely-filed redacted emails or the late filed unredacted emails when it considered the appellees' summary judgment motions. In its brief, NAJDS points us to the unredacted emails to support its contention that it raised more than a scintilla of evidence to establish its tortious interference and conspiracy claims. The appellees responded stating this court cannot consider the unredacted emails on appeal because they were not filed when the trial court heard the summary judgment. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) ("A response to a no-evidence summary-judgment motion, including any evidence opposing the motion, is due seven days before the summary-judgment hearing."). While it is clear NAJDS intended for the trial court to review the unredacted emails as summary judgment evidence, NAJDS did not file a motion for leave to

---

[2] The adverse party that designated the emails as protected information is not a party to this appeal.

supplement their summary judgment evidence with the unredacted emails. *See Ebaseh-Onofa v. McAllen Hosps., L.P.*, No. 13-14-00319-CV, 2015 WL 2452701, at \*6 (Tex. App.—Corpus Christi–Edinburg May 21, 2015, no pet.) ("Late-filed evidence may become part of the summary judgment record on leave of the court[:] . . . [w]ithout an affirmative indication in the record that the trial court granted leave, we presume that the trial court did not consider the evidence."). In its reply brief, NAJDS contends the trial court considered the unredacted emails, which were filed the day after the trial court signed the temporary sealing order. NAJDS essentially argues the record shows an affirmative indication that the trial court implicitly granted leave to supplement the summary judgment evidence with the unredacted emails.

"Where nothing appears of record to indicate that late filing of a summary judgment response was with leave of court, it is presumed the trial court did not consider the response." *B.C.*, 598 S.W.3d at 259 (alterations omitted). "Courts of appeals considering whether a trial court granted leave commonly—and correctly—examine the record for an affirmative indication that the trial court permitted the late filing." *Id.* (internal quotation marks omitted). "That indication may arise from a separate order, a recital in the summary judgment or an oral ruling contained in the reporter's record of the summary judgment hearing." *Id.* at 259–60 (internal quotation marks omitted). "So while a silent record on appeal supports the presumption that the trial court did not grant leave, courts should examine whether the record affirmatively indicates the late-filed response was accepted or considered." *Id.* (internal quotation marks omitted).

Here, it is clear from NAJDS's motion to seal that it filed the redacted emails in an attempt to timely file its summary judgment response and evidence while also complying with the trial court's protective order. The motion to seal states that "[m]any of the documents produced by [7-Eleven] support [NAJDS's] claims and are necessary evidence in [NAJDS's] responses to multiple

dispositive motions filed by [the appellees]." The motion further states NAJDS "seeks a temporary order so that its evidence can be filed with the [c]ourt under seal at the time of hearing on this motion and on the pending dispositive motions." The motion then listed the emails NAJDS sought to file under seal. The summary judgment hearing transcript indicates the parties were discussing the information that was redacted in the timely filed emails. The trial court told the parties it was taking the motions for summary judgment under advisement so that it could "read through everything and mull it over." At the end of the hearing, NAJDS reiterated it was unable to file the unredacted versions of the emails with its summary judgment evidence because it "needed to follow the procedures . . . to do it under seal" and that it was "requesting a temporary seal order to comply with [the] Protective Order." After some discussion over scheduling a permanent sealing hearing and whether the documents should be permanently sealed, the trial court stated on the record that it was "going to grant the motion to temporarily seal . . . [a]nd then we'll go from there." The next day, the trial court signed the temporary order permitting NAJDS to file the unredacted emails under seal, and, on the same day, NAJDS filed the unredacted emails under seal.

Based on the circumstances presented here, we conclude the trial court's temporary order granting the motion to file the emails under seal is an affirmative indication that the trial court implicitly granted leave to supplement NAJDS's summary judgment evidence with the unredacted emails. The motion expressly requested to file the emails under seal so that they could become part of the summary judgment evidence. The only reason in the record to grant the temporary motion to seal and to file the unredacted emails under seal was to supplement the summary judgment evidence. The trial granted the motion and permitted these specific emails to be filed under seal. The temporary sealing order was signed the day after the summary judgment hearing

and the unredacted emails were filed that same day. The trial court did not grant the no-evidence summary judgment motions until nearly two weeks later. The trial court's order granting the motion to temporarily seal and the delayed ruling on the no-evidence motions for summary judgment indicate the trial court accepted and considered the unredacted emails when it granted the summary judgment motions.

The appellees also argue that even if the unredacted emails were considered by the trial court, they should not be considered by this court because they are inadmissible hearsay. However, appellees did not preserve this alleged error below because they did not object to the unredacted emails. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) ("Without both an objection and a ruling, the complained-of-evidence remains part of the summary judgment record and should be considered by the court of appeals in reviewing the trial court's judgment.").

Accordingly, we will also consider the unredacted emails in our de novo review.

## B. NAJDS Met its Summary Judgment Burden

Having determined we may consider the unredacted emails, we now turn to whether NAJDS met its burden to defeat the appellees' no-evidence motions for summary judgment on NAJDS's tortious interference and civil conspiracy claims.

### 1. Tortious Interference with a Contract

NAJDS argues it met its summary judgment burden when it provided more than a scintilla of evidence establishing each element of its tortious interference with a contract claim. On appeal, most of the appellees' briefing focuses on whether this court should consider the unredacted emails for the reasons explained above.

"The elements of a claim for tortious interference with an existing contract are (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred." *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 347 (Tex. 2025) (internal quotation marks omitted).

Neither Dimension nor Prudent challenged the first element in their no-evidence motions for summary judgment; thus, the existence of a lease agreement between NAJDS and 7-Eleven that was subject to interference is undisputed. Instead, the appellees asserted in the trial court that there is no evidence to support NAJDS's claim that the appellees willfully and intentionally interfered with the contract and such interference caused NAJDS damages.

"Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *See Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995). "It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 731 (Tex. App.—Austin 2000, pet. denied) (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)).

Here, NAJDS presented summary judgment evidence showing that Dimension and Prudent were related entities and shared some form of common management or ownership. Dimension was tasked with aiding 7-Eleven to complete the initial conditions precedent under the lease agreement with NAJDS. Prudent is a land development company "that does business with and develops build-to-suit projects for several national credit tenant users, including 7-Eleven and numerous other entities in the business of operating gas stations, convenience stores, restaurants[,] and other retail

establishments."[3]

The lease agreement between 7-Eleven and NAJDS was executed in October 2019. The lease agreement shows that the parties expected the initial conditions precedent to be completed within ninety days of the date the lease agreement was executed subject to extensions provided in the lease agreement. While it is unclear what occurred over the next year, Schertz city officials met with Dimension in January 2021 to discuss issues with proposals and permits for the site and informed Dimension the city would expedite review of the site plan and special use permit applications when Dimension submitted them so that the project could advance. However, the summary judgment evidence shows that the City of Schertz did not receive the site plan or the special use permit application until May 5, 2021, approximately one and a half years after executing the lease agreement, and those applications were incomplete.

Meanwhile, the summary judgment evidence establishes Prudent was informed that 7-Eleven was unhappy with its current ground lease agreement with NAJDS and wanted to change the terms of its lease to a built-to-suit agreement whereby the landowner would be financially responsible to renovate and develop the property rather than 7-Eleven. Competent summary judgment evidence indicates Prudent was considering a built-to-suit agreement with 7-Eleven if it was able to purchase the property from NAJDS. The summary judgment evidence includes an email sent on May 21, 2021 from Michael Hampton, the vice president of Prudent, to representatives with 7-Eleven and Dimension. In the email, Hampton informed the group that Prudent met with NAJDS "twice in [the] past couple of weeks" and it was Hampton's opinion that

---

[3] Although this evidence was attached to Prudent's traditional motion for summary judgment, NAJDS points to it in its response to the no-evidence motions for summary judgment. *See State v. Three Thousand, Seven Hundred Seventy-Four Dollars and Twenty-Eight Cents U.S. Currency*, 713 S.W.3d 381, 389–91 (Tex. 2025) (holding "a response to a no-evidence motion for summary judgment that discusses and calls the court's attention to evidence in the court's record 'points out' and thus 'produces' that evidence" and the non-movant is not required to attach evidence that is already in the court's record to its response.)

"until [NAJDS] is told directly from 7-Eleven that the [ground lease] isn't going to happen, [NAJDS] will not seriously entertain our offer or engage in a meaningful negotiation." The email further stated that "an 'all hands call' could be helpful" to Dimension because it was "getting conflicting direction about whether to march full steam ahead with the ground lease site plan, OR pause/wait for an updated layout once Prudent has something settled with the owner." The email acknowledged that even under the current "remodel approach" "there are still several fundamental changes that will arise when converting this deal that affects" the plats and permitting. Then Hampton's email stated: "Therefore, I think a 'thoughtful pause' on the [special use permitting]/platting is warranted and would also reinforce 7-Eleven's position to seller [NAJDS]. Otherwise, 7-Eleven may be wasting time/resources pursuing something that won't happen, or at minimum Prudent will have to re-do some or all of [the permitting and platting] anyway once it gets a deal in place."

On May 25, 2021, Dimension sent NAJDS's counsel a letter stating Dimension was instructed to no longer communicate directly with NAJDS and instructed NAJDS to direct future communications through 7-Eleven. NAJDS rejected multiple offers from Prudent to purchase the property, and 7-Eleven eventually terminated the lease agreement in August 2021.

NAJDS alleges Dimension intentionally delayed the project to provide time and pressure for Prudent to purchase the property and enter into a built-to-suit agreement with 7-Eleven. Hampton's email show that the appellees contemplated a "thoughtful pause" on the due diligence so that Prudent could get "a deal in place." NAJDS's theory is that 7-Eleven was induced to terminate the lease agreement because of the ballooning costs during the delay caused by Dimension and the more lucrative built-to-suit agreement Prudent could offer.

The appellees argue there is no evidence their actions contributed to 7-Eleven's termination of the lease agreement. The appellees point to the provision in the lease agreement that allows 7-Eleven to terminate the lease agreement during the due diligence period if it determines, in its reasonable business judgment, that the permitting or development of the leased property would be commercially or economically impractical. The summary judgment evidence challenges the appellees' contention that the property was economically impractical because an email between 7-Eleven representatives states: "The economics work but 7-Eleven has elected not to spend the capital on this project. They want to change it to a developer funded lease."[4] The email also discussed Prudent's offers to purchase the property. When these two sentences are read together within the context of the whole email, and in the light most favorable to the non-movant, there is at the very least a genuine issue of material fact on whether it was commercially or economically impractical to continue with the lease agreement or whether 7-Eleven simply wanted out of its current ground lease agreement to pursue a more lucrative built-to-suit agreement with Prudent if NAJDS was pressured to sell the property.

Although, the appellees at the summary judgment hearing offered several excuses for the delay that may or may not win the day at trial, our standard of review on summary judgment requires us to view the evidence in the light most favorable to the non-movant and indulge every reasonable inference in favor of the non-movant; here, NAJDS. Viewing the evidence in the light most favorable to NAJDS, more than a scintilla of evidence exists to raise genuine issues of material fact on NAJDS's theory of the case that Dimension intentionally delayed the project to interfere with the lease agreement so that Prudent could acquire the property and take over the deal

---

[4] We recognize the email stated concerns that "7-Eleven's cost is double the acceptable spend for a lease remodel these days." However, the rest of the email shows 7-Eleven would still be profitable, but it was going to pursue a built-to-lease agreement instead.

with 7-Eleven. Further, we conclude NAJDS's allegations that the lease agreement was terminated due to the appellees' interference rather than economic impracticability is a reasonable inference from the evidence presented. The appellees disagree with NAJDS's portrayal of the facts, but the summary judgment evidence raises a genuine issue of material fact over whether Dimension and Prudent's actions constituted a willful and intentional interference with NAJDS's lease agreement with 7-Eleven.

The appellees also challenged whether the alleged tortious interference with the contract caused NAJDS damages. NAJDS provided evidence that 7-Eleven eventually terminated the lease agreement under its terms. As mentioned above, Hampton stated in an email to 7-Eleven and Dimension that it was his opinion NAJDS will not seriously entertain Prudent's offer to purchase the property until it is told the current ground lease is terminated. Again, when viewed in the light most favorable to NAJDS, this summary judgment evidence indicates the potential built-to-suit agreement with Prudent enticed 7-Eleven to terminate the lease agreement with NAJDS. The lease agreement establishes the amount of rent NAJDS would have received if the lease agreement were not terminated. However, the lease terms triggering rental payments were not to commence until after 7-Eleven completed the initial conditions precedent. Thus, NAJDS did not receive any rental income during the approximately eighteen-month period that Dimension was allegedly exercising due diligence to obtain the necessary permits and licenses, and NAJDS lost out on any rental income it would have received had the lease agreement not been terminated.[5] The summary judgment evidence shows that NAJDS had offers from another convenience store chain but rejected those offers and sought to honor its agreement with 7-Eleven. When viewed in the light most favorable to NAJDS, the summary judgment evidence establishes that NAJDS lost the benefit

---

[5] The lease agreement provides for delay payments if 7-Eleven exceeds the due diligence period. However, the record is unclear whether NAJDS received a reduced amount or whether it received delay payments at all.

of the bargain it had with 7-Eleven and passed on other potentially lucrative offers while Dimension was allegedly delaying due diligence so Prudent could purchase the property. We conclude NAJDS's summary judgment provides more than a scintilla of evidence to raise a genuine issue of material fact on whether it was actually damaged by the appellees' alleged interference with the lease agreement.

Under the appropriate standard of review, the summary judgment evidence presented by NAJDS is more than a scintilla of evidence raising genuine issues of material fact on whether the appellees tortiously interfered with the lease agreement between NAJDS and 7-Eleven, and whether the alleged interference caused NAJDS actual damages.

*2. Conspiracy*

Civil conspiracy is a theory of vicarious liability and not an independent tort. *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–42 (Tex. 2019). Because civil conspiracy is a derivative claim, it requires an underlying tort that has caused damages. *Id.* at 142. The elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* at 141. The damages come from the tortious act committed by a co-conspirator, not from the conspiracy itself. *Id.* at 142.

Here, NAJDS alleges at the very least Dimension and Prudent conspired to tortiously interfere with the lease agreement by inducing 7-Eleven's termination of the lease agreement to pursue a built-to-suit agreement on better terms with Prudent. The summary judgment evidence supports the first element that two or more entities were involved in the conspiracy. As mentioned above, NAJDS's theory of the case is that Prudent and Dimension conspired to intentionally delay completion of the initial conditions precedent so that the lease agreement would fail and NAJDS

would be pressured into selling the property to Prudent. As outlined in the tortious interference section, the summary judgment evidence viewed in the light most favorable to NAJDS raises a genuine issue of material fact on the challenged elements of NAJDS's tortious interference claim. Further, the email exchanges amount to more than a scintilla of evidence to support NAJDS's theory that the appellees conspired with each other and 7-Eleven to pressure NAJDS to sell the property. The appellees contend there is no evidence of a meeting of the minds between Dimension and Prudent or any other party to delay the permitting process, pressure NAJDS into selling the property, or accomplish 7-Eleven's termination of the lease agreement. But Hampton's email, along with other emails in the summary judgment record provide some evidence that Prudent, Dimension, and 7-Eleven were all in agreement with 7-Eleven's termination of the existing ground lease agreement and pursuit of a built-to-suit agreement with Prudent.

Regarding the unlawful act in furtherance of the objective, we have already concluded NAJDS presented enough evidence to defeat the appellees' no-evidence motions for summary judgment on its tortious interference claims. Finally, our conclusion that NAJDS presented more than a scintilla of evidence raising a genuine issue of material fact on whether the appellees' tortious interference with the lease agreement caused NAJDS damages likewise applies to the same element in its civil conspiracy claim. Thus, NAJDS has presented more than a scintilla of evidence raising genuine issues of material fact on whether the appellees conspired with 7-Eleven to intentionally delay the project to pressure NAJDS to sell the property to Prudent. After NAJDS refused to sell the property to Prudent, 7-Eleven terminated the lease agreement. NAJDS's summary judgment evidence raises a genuine issue of material fact on whether NAJDS suffered actual damages from the lost income it would have otherwise received in a lease agreement with either 7-Eleven or the other convenience store chain that offered to lease the property.

At the summary judgment stage, we, like the trial court, are required to view the evidence in the light most favorable to NAJDS and indulge every reasonable inference in NAJDS's favor. Under this standard of review, NAJDS has presented more than a scintilla of evidence to support its tortious interference and conspiracy claims.

Accordingly, we sustain NAJDS's issues on appeal.

## CONCLUSION

We reverse the trial court's summary judgment and remand the cause for further proceedings consistent with this opinion.

Irene Rios, Justice